**Below is an Opinion of the Court.**

_____
TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re ) | |
| ) | Case No. 306-30965-tmb13 |
| MICHAEL EVAN POOL and ) | |
| JUANDA MARIE POOL, ) | |
| ) | MEMORANDUM OPINION |
| Debtors. ) | |
| ) | |

This matter came before the court on September 7, 2006, for a hearing on confirmation of the Debtors' proposed 2nd Amended Chapter 13 Plan Dated July 31, 2006 ("Plan"). All objections to confirmation had been resolved except the objection raised by Fred Meyer Employees Credit Union (hereinafter "Fred Meyer"). The Debtors were represented by Michael O'Brien. Fred Meyer was represented by Michelle Bertolino.

This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. §§ 151 and 157(b)(2)(B) and (L). This memorandum opinion constitutes the court's findings of facts and conclusions of law in accordance with Fed. R. Bankr. P. 7052. For the reasons set forth herein, Fred Meyer's objection is overruled.

FACTS

The facts are undisputed. The debtors filed their chapter 13 bankruptcy petition on April 18, 2006,

Page 1 - MEMORANDUM OPINION

after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Within 910 days of the filing of the petition, debtors purchased two vehicles: a 2004 Ford truck ("Ford") and a 2005 Mercury Mariner Sport ("Mercury"). The Ford and the Mercury were pledged to Fred Meyer and its liens were perfected. The Plan provided that debtors will retain the Ford and pay the full amount of the claim secured by that vehicle with interest at the contract rate of 4.25%. The Plan also provides for surrender of the Mercury to Fred Meyer. It further provides that Fred Meyer's claim with respect to the Mercury "is a fully secured claim attached to a motor vehicle incurred within the 910 days preceding the date of the petition. Fred Meyer EFCU shall be entitled to recovery of the vehicle upon surrender but shall NOT be entitled to file a deficiency claim in this case." (emphasis in original).

Fred Meyer did not object to the plan treatment for the Ford, but did object to the plan treatment for the Mercury. Fred Meyer contended under the Bankruptcy Code, as amended by BAPCPA, it should be allowed to amend its secured claim to an unsecured claim for any deficiency balance after sale of the Mercury.

## ISSUE

The only issue before the court is whether 11 U.S.C. § 1325(a)(5) allows the Debtors to surrender the Mercury in full satisfaction of their debt to Fred Meyer or whether Fred Meyer is entitled to assert any unsecured deficiency claim after its collateral is surrendered and liquidated in a commercially reasonable manner.

## DISCUSSION

Sections 1325(a)(5)(B)(ii) and (C) of the Bankruptcy Code provide in pertinent part:

"(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

   (5) with respect to each allowed secured claim provided for by the plan—

. . . .

     (B)(I) the plan provides that—

. . . .

Page 2 - MEMORANDUM OPINION

>> (ii) the value, as of the effective date of the plan, of property to be distributed under
>> the plan on account of such claim is not less than the allowed amount of such claim . . .
>
> . . . or
>
> (C)  the debtor surrenders the property securing such claim to such holder . . ."

Prior to the enactment of BAPCPA, the Bankruptcy Code allowed a debtor to "cram down" the amount of the secured claim to the value of the collateral and pay the remainder as a general unsecured claim. Likewise, a creditor to whom collateral was surrendered under a confirmed plan retained an unsecured claim for any deficiency remaining after sale of its collateral.

BAPCPA amended the Bankruptcy Code with respect to this subsection to provide:

> "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing."

This amendment to the Bankruptcy Code was not numbered and has been commonly referred to as the "hanging paragraph" or the "anti-cramdown" paragraph.

A number of courts have addressed the issue of whether a creditor covered by the anti-cramdown provision of the hanging paragraph is entitled to a deficiency upon surrender and liquidation of its collateral. With one exception, all have concluded that such a creditor is not entitled to a deficiency upon surrender of its collateral.

The lead case on this issue is In re Ezell, 338 B.R. 330 (Bankr. E.D. Tenn. 2006). In Ezell, the debtors filed a plan which provided for surrender of a vehicle purchased by debtor Regina A. Ezell for her personal use within 910 days of the bankruptcy filing. The debtors' proposed plan provided for surrender of the vehicle "in full satisfaction of debt owing." Id. at 332. JP Morgan Chase Bank, N.A., the affected creditor, objected to confirmation on the grounds that the provision providing that it would have no deficiency claim following surrender of its collateral was inappropriate.

Page 3 - MEMORANDUM OPINION

In support of their position the debtors argued that "because the Anti-Cramdown Paragraph eliminates Revised § 506 from any application to Revised § 1325(a)(5) . . . there can no longer be a deficiency claim following surrender of the collateral because Chase's claim is fully secured, notwithstanding any lesser amount that Chase might, in fact, realize upon its liquidation of the [vehicle] following surrender." Id. at 335. For its part, Chase contended that "because the Anti-Cramdown Paragraph expressly provides that Revised § 506 does not apply to Revised § 1325(a)(5), its claim remains fully secured by the [vehicle] following its surrender, with the result being that any deficiency balance up to the amount of its $24,942.07 claim remains secured and must be treated as such in the Debtors' Plan." Id. at 335. Allowed interveners, consisting of various lending institutions, contended that "the inapplicability of Revised § 506 under the Anti-Cramdown paragraph is irrelevant, as that statute never applied in cases involving surrender under Pre-BAPCPA § 1325(a)(5)(C). According to this argument, the Anti-Cramdown Paragraph changes nothing, and secured creditors to whom property is surrendered under Revised 1325(a)(5)(C) are still entitled to an unsecured deficiency claim following disposition of their collateral." Id. at 335.

The court rejected the argument that § 506 did not apply to cases involving surrender of property prior to the enactment of BAPCPA. In doing so it stated:

> "Section 506 is to be applied by bankruptcy courts when a party in interest objects, pursuant to § 502, to the value of a proof of secured claim filed by a creditor in the bankruptcy proceedings . . . . It is clear then that § 506 is designed to determine the value and amount of a creditor's secured claim when the creditor's claim is undersecured in relation to the property securing the debt. In order to achieve its given purpose, § 506(a) divides or bifurcates allowed claims into two parts: (1) a secured claim to the extent of the value of [the collateral]; and (2) an unsecured claim to the extent the value of [the collateral] is less than the amount of such allowed claim.
>
> Pre-BAPCPA § 1325(a)(5), as does Revised § 1325(a)(5), dictated the treatment to be accorded an allowed secured claim if the debtor was to obtain confirmation of the Chapter 13 plan. Although Pre-BAPCPA § 1325(a)(5)(B) and Pre-BAPCPA § 1325(a)(5)(C) provided different remedies and were mutually exclusive, both relied upon Pre-BAPCPA § 506(a) to bifurcate a creditor's claim into its allowed secured and allowed unsecured components." Id. at 338. (citations omitted)

The court went on to state:

> "The argument that Pre-BAPCPA § 506(a) had no application to surrender under Pre-BAPCPA § 1325(a)(5)(C) is misplaced. Valuation of a creditor's allowed secured claim under Pre-BAPCPA § 506(a) was 'determined in light of the purpose of the valuation and of

Page 4 - MEMORANDUM OPINION

the proposed disposition or use of such property . . . .' 11 U.S.C. § 506(a) (2004). Upon surrender under Pre-BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined, while, for cramdown purposes under Pre-BAPCPA § 1325(a)(5)(B), replacement value was the criteria." Id. at 339-340.

With respect to BAPCPA the court stated that:

"The Anti-Cramdown Paragraph serves to eliminate Revised § 506 from the allowed secured/unsecured claim bifurcation treatment otherwise mandated by Revised § 506 with regard to those claims secured by "a motor vehicle" and "any other thing of value" falling within its provisions. In other words, when the creditor files its claim as secured, the Anti-Cramdown Paragraph precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components. Unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount at which the claim is filed. Accordingly, under Revised § 1325(a)(5), a creditor holding a secured claim falling within the scope of the Anti-Cramdown Paragraph is fully secured for the amount of its claim, which is, in actuality, the debt owed. If the property is to be retained pursuant to Revised § 1325(a)(5)(B), the debtor must treat the entire claim as secured, and unless the creditor agrees to other treatment, must propose a plan that will pay the full amount of the claim as secured over the life of the plan. It only stands to reason that the same analysis is true when applied to surrender under Revised § 1325(a)(5)(C) --the creditor is fully secured, and surrender therefore satisfies the creditor's allowed secured claim in full." Id. at 340.

The Ezell court then looked to the legislative history of the anti-cram-down provision and found that it consisted only of "statements of Congressional intent, which basically mirror the statutory language" and provided "no further clarification." Id. at 341. Consequently, it concluded that it had "no choice but to interpret the Anti-Cramdown Paragraph as written, i.e., that it applies to both Revised § 1325(a)(5)(B) and (C)."

The Ezell court further noted that:

"were the court to find that a secured creditor whose collateral has been surrendered under Revised § 1325(a)(5)(C) is entitled to file either a secured or unsecured deficiency claim, the method of determining the amount of the allowed deficiency claim would be demonstrably at odds with Revised § 506(a), which, as applied to Chapter 13 consumer debtors, directs that for purposes of valuing personal property securing an allowed claim, the value 'shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing' and, to the extent the property was 'acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.' This method . . . cannot apply if the property is surrendered under Revised § 1325(a)(5)(C) and thereafter liquidated by the creditor in accordance with applicable state law." Id. at 341-42 (citation omitted)

See, also, In re Payne, 2006 WL 2289371 (Bankr. S.D. Ohio 2006), ("[t]he plain meaning of this

Page 5 - MEMORANDUM OPINION

statute, [applying the anti-cramdown provision of the hanging paragraph to both § 1325(a)(5)(B) and §1325(a)(5)(C)] cannot be overcome by silence in the legislative history."); In re Long, 2006 WL 2090246 (Bankr. E.D. Tenn. 2006) ("the court finds that the Anti-Cramdown Paragraph, as mandated by its terms, applies equally to both Revised § 1325(a)(5)(B) and Revised § 1325(a)(5)(C)." ); In re Brown, 346 B.R. 868, 874 (Bankr. N.D. Fla 2006) ("[s]ince the language of the Hanging Paragraph is unambiguous, the Court must apply it as written unless doing so would yield a result that is either demonstrably at odds with congressional intent or absurd. Applying the Hanging Paragraph as written yields no such result."); In re Sparks, 346 B.R. 767, 773 (Bankr. S.D. Ohio 2006) ("[f]rom a practical standpoint, this application of § 1325(a)(5) requires the creditor to forego the opportunity to take advantage of the provisions of § 506 should it liquidate the collateral for less than the amount it is due, just as it requires the debtor to do so should the debtor decide to retain the vehicle. While this may appear to be inconsistent with the overall goals of BAPCPA to provide greater protection to creditors, the Court is not prepared to say this is an absurd result in light of the sparse guidance from Congress."); and In re Osborn, 2006 WL 2457933 (Bankr. W.D. Mo. 2006) ("the plain language of § 1325(a)(5) and the hanging paragraph mandate that, as a matter of law, a secured creditor of the kind described in the hanging paragraph has a secured claim for the full amount due as of the date of the filing of the petition, regardless of whether the debtor intends to retain the collateral or surrender it. That being the case, these creditors are not entitled to a deficiency claim if the collateral is surrendered under § 1325(a)(5)(C).")

As noted, there is one case in which the court held that the hanging paragraph did not apply to § 1325(a)(5)(C). In In re Duke, 345 B.R. 806 (Bankr. W.D. Ky. 2006) the court concluded that the language of the hanging paragraph was ambiguous. It then looked to the legislative history of the provision and concluded that "[t]he only clear intent discerned from the legislative history on the hanging paragraph is that Congress intended to provide more protection to creditors with purchase money security interests." Id. at 809. It noted that:

> "While the changes associated with BAPCPA have been considered by many commentators and parties-in-interest to be sweeping and dramatic, the passage of an anti-deficiency is far beyond what a plain reading of the statute permits. Absent clear legislative intent on the face

Page 6 - MEMORANDUM OPINION

| | |
|---|---|
| 1 | of the statute, the surrender of a vehicle meeting the requirements of the 'hanging paragraph' does not result in a full satisfaction of the Creditors' claims, leaving to them whatever state law remedies are available to them, including pursuit of a deficiency as an unsecured claim during the Chapter 13 proceeding." <u>Id.</u> at 809. |

With due respect I disagree with the <u>Duke</u> court. I find that the language of the hanging paragraph is clear and unambiguous. As such, there is no reason to resort to review of the legislative history of the paragraph to discern its meaning. The anti-cramdown provisions of the hanging paragraph clearly state that "for purposes of paragraph (5), section 506 <u>shall not apply</u> . . . ." to certain creditors. Had Congress intended that the section 506 continue to apply to § 1325(a)(5)(C) it could have so stated. It did not. Consequently, I agree with the <u>Ezell</u> court that the hanging paragraph applies to both Revised § 1325(a)(5)(B) and (C) and, therefore, the Debtors may surrender the Mercury in full satisfaction of the debt to Fred Meyer.

An order confirming plan was entered by the court on September 25, 2006.

###

cc: Michael D. O'Brien
Michelle Bertolino
Brian D. Lynch
U.S. Trustee

Page 7 - MEMORANDUM OPINION